## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JEFFREY A. EWING,

    Petitioner,

v.            Case No. 22-2802-SPM

ANTHONY WILLS,

    Respondent.

## <u>MEMORANDUM AND ORDER</u>

**McGLYNN, District Judge:**

Following jury trials in Madison County, Illinois, Petitioner Jeffrey Ewing was convicted of murder, armed violence, and a violation of the Firearm Owners Identification Card (FOID Card) Act in the Dwight Riddlespriger case and of murder in the Antonio Ray case (Doc. 1, pp. 1, 9). He was sentenced to a term of imprisonment for 45 years in the Riddlespriger case and imprisonment for life in the Ray case. (*Id.*). He is now in the custody of the Illinois Department of Corrections at the Menard Correctional Center.

Ewing filed the instant action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Title 28 U.S.C. § 2254(a) grants jurisdiction to the federal courts to entertain a petition for a writ of habeas corpus on behalf of an individual who is in custody pursuant to a judgment of a state court on the grounds that the individual is in custody in violation of the Constitution or laws or treaties of the United States.

Ewing's *pro se* Petition raises 57 grounds for relief. Respondent grouped the claims based on when each claim was raised in state court, which the Court adopts for convenience:

1. Claims 1-5: Claims brought in Ewing's direct appeal in the Riddlespriger case. (Doc. 1, pp. 17-41) (incorporating brief on direct appeal).

2. Claims 6-13: Claims from the Amended Postconviction Petition in the Riddlespriger case. (Doc. 1, pp. 42-83) (incorporating Amended Postconviction Petition).

3. Claims 14-16: Claims from Ewing's First Addendum to his Amended Postconviction Petition in the Riddlespriger case. (Doc. 1-1, pp. 17-43) (incorporating First Addendum).

4. Claims 17-19: Claims from Ewing's Second Addendum to his Amended Postconviction Petition in the Riddlespriger case. (Doc. 1-1, pp. 44-78). (incorporating Second Addendum).

5. Claims 20-54: Claims from Ewing's post-trial motions in the Ray case. (Doc. 1-1, p. 77; Doc. 1-2, p. 57; Doc. 1-3, pp. 59-73) (incorporating Motion for Directed Verdict, Motion to Vacate Sentence, and Addenda).

6. Claims 55-57: Claims from Ewing's Petition for Relief from Judgment in the Ray case. (Doc. 1-2, p. 58; Doc. 1-3, pp. 1-42). (incorporating Petition for Relief from Judgment).

## FACTUAL & PROCEDURAL BACKGROUND

### THE RIDDLESPRIGER CASE

### *State Trial Proceedings[1]*

Ewing was indicted in January 1999 on charges of first-degree murder, armed violence, and violating the FOID Card Act in the death of Dwight Riddlespriger. The State filed an amended information in November 1999 which added one count of

---

[1] This summary of the facts is derived from the detailed descriptions by the Illinois Appellate Court, Fifth District, in its opinion on direct appeal. *People v. Ewing*, No. 5-01-0154 (February 13, 2003) (Doc. 18-9, pp. 486-98). The state court's factual findings are presumed to be correct unless rebutted by clear and convincing evidence, which Ewing has not done. 28 U.S.C. § 2254(e).

felony murder. At trial, four eyewitnesses testified that Ewing, Clifton Wheeler, and Riddlespriger were at Pete's Lounge in Alton, Illinois on December 15, 1996. Ewing and Wheeler walked past Riddlespriger in the parking lot after the bar was closed due to a fight. Riddlespriger commented that he would fight either of them one-on-one and that he was tired of people owing him money. Ewing retrieved a pistol from his car and gave it to Wheeler, who shot Riddlespriger nine or ten times at close range, killing him.

Two witnesses testified that Ewing admitted to them that he gave Wheeler the pistol and told him to kill Riddlespriger. Another witness stated that Riddlespriger had attacked Ewing's father due to a financial debt that he owed Riddlespriger. Many of the witnesses had either been convicted of or had pending felony charges during the trial. Ewing called witnesses that stated he was not with Wheeler at the time of the shooting and that Riddlespriger had not injured his dad prior to the murder. Ewing was convicted of all charges on December 10, 1999.

The trial court sentenced Ewing to 45 years in prison for first-degree murder, 20 years in prison for armed violence, and 3 years in prison for violating the FOID Card Act. The trial court declined to sentence Ewing for felony murder.[2] (Doc. 18-7, p. 211). The trial court noted several statutory factors in aggravation, including that the conduct caused serious harm to the victim.

---

[2] The trial judge explained at sentencing that since the first-degree murder and felony murder charges were based on the same act, the court could not impose sentence for both convictions. (Doc. 18-7, pp. 210-11).

***Direct Appeal***

Ewing raised the following points on direct appeal:

1.  It was plain error not to instruct the jury that the prosecution must prove beyond a reasonable doubt that Ewing was "legally responsible" for the acts of Wheeler, his co-defendant.

2.  The trial court denied Ewing his Fourteenth Amendment right to due process and equal protection when the trial court allowed the prosecution to amend with an information a legally valid indictment causing substantial change in the charging instrument.

3.  No reasonable trier of fact could have found Ewing guilty of first-degree murder beyond a reasonable doubt from the testimony adduced at trial.

4.  Whether Ewing's armed violence conviction must be vacated, as that conviction is based on the same physical act (shooting the victim) as the first-degree murder conviction.

5.  Whether the trial court erred in sentencing Ewing to forty-five years imprisonment, where the trial court improperly considered in aggravation that he had caused serious harm to the victim, a factor inherent in the offense of first-degree murder, and likely considered the improper armed violence conviction when imposing sentence.

(Doc. 1, pp. 2-3). His convictions for first-degree murder, violating the FOID Card Act, and felony murder were affirmed and the conviction for armed violence was vacated. (Doc. 18-9, pp. 486-498). Ewing did not file a Petition for Leave to Appeal (PLA) with the Illinois Supreme Court. (*See* Doc. 18-1, pp. 13-14 (showing no timely filed PLA)).

### Postconviction Petitions[3]

While his direct appeal was still pending in October 2002, Ewing filed a *pro se* Petition for relief under the Post-Conviction Hearing Act. (Doc. 18-9, p. 414). The Petition was docketed for further proceedings but was delayed due to Ewing firing multiple attorneys and filing numerous motions for substitution of judges, all of which were denied. (Doc. 18-1, pp. 13-22). The State filed a motion to dismiss the Petition, which was denied except for the claim regarding the mandatory joinder violation because it was procedurally defaulted. (Doc. 18-10, p. 657). Ewing filed *pro se* Amended Petitions with the trial court in November 2006 and August 2012. (Doc. 18-1, pp. 18, 31). The claims raised in his state Petition following the amendments may be summarized as follows:

1. Ewing was denied due process because the witnesses against him were not properly confronted with guilty plea deals, prior convictions, and false statements that they made.

2. Ewing was denied his right to a speedy trial and the effective assistance of counsel where the state filed murder charges on the same act and the same facts two years after bringing the initial charge, where a speedy trial demand had been made, and where the mandatory joinder rule made the continuances inoperable as to the murder charge.

3. Ewing was denied the right to effective counsel on conflict grounds where, *inter alia*, the same lawyer who filed the original charge as an ASA represented the defendant at trial, and the purported waiver did not explain the per se conflicts involved with that lawyer having to allege his own ineffectiveness.

4. Ewing was denied the effective assistance of counsel where counsel told the jury in opening statements that a witness would testify to exonerate the

---

[3] The facts for this section come from the common law record of the case (Doc. 18-9 – 18-2), the docket sheet for *People v. Ewing*, 96CF2295 (Doc. 18-1), and the appellate court decisions regarding Ewing's postconviction petitions. *People v. Ewing*, No. 5-11-0147 (5th Dist. 2013); *People v. Ewing*, No. 5-13-0359 (5th Dist. 2016); *People v. Ewing*, No. 5-14-0398 (5th Dist. 2017); *People v. Ewing*, No. 5-20-0003 (5th Dist. 2023).

defendant, yet that witness was not called and counsel made the statement without interviewing the witness or his lawyer first.

5. Ewing was denied a fair trial where Keith Jensen engaged in witness intimidation to prevent exonerating defense evidence from being presented.

6. Ewing was denied a fair trial where the state violated discovery rules by admitting for the first time in closing arguments that it had made a deal with a witness to have him released from prison early in return for his cooperation.

7. Ewing was denied a fair trial where the prosecutor falsely argued that the state's witnesses had no motive to favor the state and vouched for the state's case.

8. Ewing was denied the effective assistance of trial and appellate counsel through the failure to raise all the above issues, which were apparent from the record.

Ewing made several attempts to add addenda to his amended post-conviction petition. In June 2015, Ewing filed an addendum to his amended Petition which raised three additional claims (Doc. 18-1, p. 38, Doc. 18-11, pp. 252-448). The State filed a motion to dismiss the addendum in August 2015, which was granted in April 2016. (Doc. 18-11, pp. 627-28). Ewing's second addendum to his amended Petition was filed in July 2016, which raised Claims 17-19. (*Id.* at 641-732). The State filed a motion to dismiss the addendum, which was granted in March 2017 (*Id.* at 733-34).

Ewing has also filed a total of five of *pro se* petitions for relief from judgment under 735 ILCS 5/2-1401. These petitions raised various issues such as the illegality of an eavesdropping order issued by the trial judge and violations of the compulsory joinder statute. *People v. Ewing*, No. 5-20-0003 ¶ 9-13 (5th Dist. 2023). The State filed motions to dismiss each petition, arguing that the two-year statute of limitations had expired and Ewing had not shown adequate reason to excuse

the late filing. *Id.* at ¶ 9-14. The trial court dismissed each petition as time-barred and each dismissal was affirmed on appeal. *Id.* at ¶ 9-14, 32.

The Amended Postconviction Petition first filed in 2002 is still pending before the trial court. After a series of continuances, the trial court has set an evidentiary hearing on Ewing's postconviction petition for April 2024.

THE RAY CASE

*State Trial Proceedings[4]*

Ewing was indicted in December 1999 on one count of first-degree murder based on intent to kill, one count of first-degree murder based on intent to cause serious bodily harm, one count of first-degree murder based on the felony murder rule, and one count of aggravated battery. (Doc. 18-2, p. 1). Ewing filed *pro se* motions to dismiss the felony murder and aggravated battery counts of the indictment in October 2003. (*Id.* at 7). The trial court granted Ewing's motion to dismiss the aggravated battery count as outside the statute of limitations in December 2003 and dismissed the felony murder charge in June 2006. (*Id.* at 8, 21).

The trial was delayed until 2017. While the case was pending, Ewing filed 22 motions to dismiss the indictment in whole or in part, 13 motions to remove the judge presiding over his case, and 10 interlocutory appeals challenging the rulings of the trial court (Doc 18-2, pp. 1-63). The trial court granted 83

---

[4] The facts for this section are derived from the docket sheet from the Circuit Court of Madison County in *People v. Ewing*, No. 99 CF 2709.

continuances on Ewing's request and three more to which Ewing agreed. (*Id.*)
Ewing was represented by four separate attorneys during this period with an
additional two attorneys assigned as stand-by counsel while Ewing was acting *pro
se*, including during trial. (*Id.* at 1, 3-4, 15, 54, 61). Ewing was convicted in
January 2017 and sentenced to life in prison in March of the same year. (*Id.* at 65-
66).

### *Postconviction Proceedings*

Ewing motioned for the appointment of counsel the day following
sentencing, which the trial court immediately granted. (Doc. 18-2, p. 66). Ewing
filed a *pro se* motion for new trial on April 25, 2017, 95 days after the jury returned
its verdict. (*Id.*). Appointed counsel filed a motion to reconsider the sentence on
the same day. (*Id.*). Ewing attempted to appeal his conviction to the appellate
court while his motion for new trial was pending, but the appeal was dismissed as
premature. (*Id.* at 66-67). A second appeal was filed during the same period
challenging the trial court's denial of Ewing's request for the trial record, which
was likewise dismissed by the appellate court. (*Id.* at 76.).

In October 2017, Ewing filed *pro se* addenda to the motions for new trial
and to reconsider sentence. (Doc. 18-2, p. 67). One week after filing the addendum,
Ewing requested new counsel and the trial court appointed a new attorney to
represent him. (*Id.*). A second addendum was filed one week later, and, after
Ewing requested to fire his counsel, a new attorney was appointed for Ewing a
week after the second addendum. (*Id.*). In August 2018, Ewing filed a *pro se* 2-
1401 Petition arguing that the trial court did not have jurisdiction over him due

to the delay in bringing the case to trial. (*Id.* at 68, 71). In December 2018, Ewing filed a *pro se* motion for a directed verdict. (*Id.* at 68.). Ewing's attorney filed a motion to withdraw from the case in March 2019, which was granted by the trial court. (*Id.*). Afterwards, Ewing was given 21 days from the date of the order to obtain a new attorney. (*Id.*) The trial court denied Ewing's motion for the appointment of counsel and his motion to reconsider that ruling. (*Id.* at 68-69).

Ewing requested a hearing on all pending matters in August 2019 and filed an addendum to his motion for a directed verdict in September 2019. (Doc. 18-12, p. 69). In June 2020, the trial judge examined the pending motions to determine which could be ruled on without a hearing. (*Id.*). The court denied Ewing's motion for a directed verdict for not being a proper post-judgment pleading. (*Id.*) The court also denied Ewing's motion for reconsideration of sentence as untimely. (*Id.*).

After a series of hearings in early 2023, the trial court set a briefing schedule to address all pending matters. (Doc. 18-2, pp. 69-70). The court held a hearing on Ewing's 2-1401 Petition and denied it on the grounds that the delay was attributable to Ewing himself and to matters outside of the control of the parties. (*Id.* at 71-72). Ewing filed a notice of appeal with the appellate court challenging the denial of his 2-1401 Petition in June 2023. (*Id.* at 72). An evidentiary hearing scheduled for June 23, 2023, was continued on Ewing's motion. (*Id.*). In August 2023, the appellate court dismissed Ewing's appeal as premature. (*Id.*). Ewing filed a second notice of appeal in July 2023, although it is unclear from the record what the issue presented is. (*Id.*). Ewing filed a petition with the trial court in September 2023, although the record does not state the type

of petition filed. (*Id.* at 73). The Petition is currently pending before the trial court. (*Id.*). In February 2024, the trial court set the Motion for New Trial for a hearing in April 2024. (*Id.*) Ewing's appeal is still pending before the appellate court at this time. (*Id.*, p. 74).

<u>**FEDERAL HABEAS PROCEEDINGS**</u>

Ewing filed the instant Petition in December 2022. (Doc. 1.). Ewing alleges that inordinate delay by the trial court and the State has led to a fundamental miscarriage of justice and left him without a remedy in state court. (*Id.* at 1). The State filed a motion to dismiss without prejudice in June 2023 arguing that the delay was attributable to Ewing so this Court should not hear the petition until the state court process concludes. (Doc. 18).

**LEGAL STANDARD**

This Petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as the AEDPA. "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Habeas is *not* merely another round of appellate review. 28 U.S.C. § 2254(d) restricts habeas relief to cases where the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"

or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases." *Coleman v. Hardy,* 690 F.3d 811, 814 (7th Cir. 2012) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Coleman*, 690 F.3d at 814 (quoting *Williams*, 529 U.S. at 407).

Federal habeas review serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). The Supreme Court has repeatedly emphasized that the Section 2254(d) standard "is intentionally 'difficult to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014), and *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)).

In addition to the requirement for timely filing under the AEDPA, a habeas petitioner must clear two procedural hurdles before the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. *See Bolton v. Akpore*, 730 F.3d 685, 694-696 (7th Cir. 2013). Before seeking habeas relief, a petitioner is required to bring his claim(s) through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is

designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also* 28 U.S.C. § 2254(c). Under the Illinois two-tiered appeals process, petitioners such as Ewing must fully present their claims not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review in cases such as this one. *See Id.*

If a petitioner has pursued his state-court remedies to exhaustion, the claims may nevertheless be barred by procedural default. *See Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). "[W]hen the habeas petitioner has failed to fairly present to the state courts the claim on which he seeks relief in federal court and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim." *Id.* A fairly presented claim "must place before the state court both the controlling law and the operative facts in a manner such that the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to re-solve the issue on that basis." *Hicks v. Hepp*, 871 F.3d 513, 530 (7th Cir. 2017) (internal quotation marks omitted). A petitioner may be excused from procedural default only "if the petitioner can show both cause for and prejudice from the default or can demonstrate that the district court's failure to consider the claim would result in a fundamental miscarriage of justice." *Bolton*, 730 F.3d at 696.

A claim of ineffective assistance of counsel is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). A defendant alleging ineffective assistance of

counsel must show that 1) counsel's performance was deficient and 2) that the deficient performance prejudiced the defense. 466 U.S. at 687. Performance is deficient when it is shown that counsel made errors so serious that it was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* Prejudice is shown when the deficient performance makes the result of the trial unreliable. *Id.* There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Minnick v. Winkleski*, 15 F.4th 460, 468 (7th Cir. 2021).

### ANALYSIS

At the outset, the Court must determine whether it may adjudicate the Petition on the merits despite Ewing's failure to exhaust all available state law remedies. Ewing argues that his failure to exhaust all available state law remedies is excused because of inordinate delay by the prosecution and state courts in adjudicating the cases. (Doc. 35, p. 26). The State argues that this Court is required to dismiss the Petition without prejudice as it may not entertain a Petition that contains both exhausted and non-exhausted claims under 28 U.S.C. § 2254(b)(1)(A). (Doc. 18, p. 22). This Court need not determine whether the delay in the state courts is inordinate as, contrary to the State's assertions, the Court is able to adjudicate the Petition even though some claims are unexhausted. 28 U.S.C. § 2254(b)(2); *See also Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (holding that a federal district court faced with a petition containing both exhausted and unexhausted claims may deny it on the merits or dismiss it without prejudice).

The State also contends that the Court should not exercise its jurisdiction over the present Petition because the Illinois Supreme Court could potentially re-open the conviction and adjudicate it on direct review. (Doc. 18, pp. 25-26). The possibility of Ewing's conviction being re-opened does not change the fact that at this moment it is final. Ewing's conviction was made final after the time to file a timely motion for a new trial ended. *See* 725 ILCS 5/116-1(b). The mere possibility that it could be re-opened in the future does not change that fact. *Fernandez v. Sternes*, 227 F.3d 977, 980-81 (7th Cir. 2000) (holding that state processes end when the time to seek review expires regardless of the possibility of an excused late filing).

I.   **Claims 1-5 and 14-19 from the Riddlespriger Case Are Procedurally Defaulted Because Ewing Failed to Fairly Present the Claims Through One Complete Round of the State's Established Appellate Review Process Through Direct Appeal or Through Postconviction Petitions**

The Court is unable to consider Claims 1-5 and 14-19 on the merits because they are procedurally defaulted.

Ewing raised claims 1-5 in his appellate brief before the intermediate appellate court but failed to file a PLA in the Illinois Supreme Court. (Doc. 1, pp. 2-3); *See* (Doc. 18-9, pp. 10-11) (no record of timely PLA filed with Illinois Supreme Court). These claims are therefore procedurally defaulted because Ewing did not assert the claim through a complete round of state court review. *See Oaks v. Pfister*, 863 F.3d 723, 726 (7th Cir. 2017).

Furthermore, the Court is unable to consider claims 14-19 on the merits because Ewing failed to raise these claims in any state court forum in accordance with state law. These claims were not asserted in Ewing's appellate brief in the

intermediate appellate court. (Doc. 1, pp. 2-3). These claims were also not asserted within Ewing's timely filed state post-conviction petition because they were waived under state law. (Doc. 18-11, pp. 627-28, 733-34).

## II. Claims 20-54 and 55-57 from Ewing's Post-trial Motions in the Ray Case Are Procedurally Defaulted and Time-Barred Because Ewing Failed to Fairly Present the Claims Through One Complete Round of the State's Established Appellate Review Process Through Direct Appeal or Through Postconviction Petitions

The Court is unable to consider these claims on the merits because the statute of limitations has run on these claims. Ewing's conviction became final on February 20, 2017, thirty days after the jury returned its guilty verdict. Ewing did not file a motion for a new trial until April 25, 2017, over one month after the deadline imposed by Illinois law. 725 ILCS 5/116-1 (requiring motion for a new trial to be filed within 30 days of the return of the verdict). The one-year statute of limitations imposed by AEDPA began to run on the date Ewing's conviction became final and expired on February 20, 2018. 28 U.S.C. § 2244. Ewing did not file any state postconviction pleadings until August 22, 2018, therefore the statute of limitations under AEDPA was not tolled and expired before the filing of the instant Petition on December 12, 2022.

Even if Ewing's claims were not time-barred, the Court would still be unable to consider claims 20-54 and 55-57 on the merits because they are procedurally defaulted. Ewing's failure to file a timely motion for new trial means that there are no preserved federal constitutional issues that this Court can adjudicate on the merits. Ewing did not raise any issues after his trial in accordance with Illinois law, therefore there are no issues that he can raise before this Court.

### III.   Claims 6 and 8-13 Related to the Riddlespriger Case are Denied on the Merits while Claim 7 is Denied as Procedurally Defaulted for not being Raised on Direct Review in State Court.

The remainder of the claims raised in Ewing's Petition are properly preserved and have been brought within AEDPA's statute of limitations and are adjudicated on the merits. The claims are not discussed in numerical order because some involve issues intertwined with later claims.

Claim 6 alleges a due process violation stemming from ineffective assistance of trial counsel and prosecutorial misconduct. Ewing claims that a number of the witnesses against him at trial were not properly confronted with prior convictions, guilty plea deals, and false statements. The decision to impeach a witness and the manner in which it is done are normally considered strategic choices within the discretion of trial counsel. *See Jones v. Butler*, 778 F.3d 575, 584 (7th Cir. 2015).

Here, the witnesses were all confronted with prior felony convictions. Given that none of the felony convictions were for crimes of dishonesty, it was reasonable for trial counsel to focus on the specific testimony of each witness and not dwell on prior felony convictions that were not related to the testimony given on direct examination. The mere fact that the jury did not know that a witness pleaded guilty to burglary after being charged with residential burglary or had a ten-year-old drug conviction would not have changed the outcome of Ewing's trial. *See United States v. Senn*, 129 F.3d 886, 893 (7th Cir. 1997) (holding that failure to use all potential impeaching material does not always affect the outcome of trial).

Claim 8 alleges that Ewing was denied effective assistance of counsel because his counsel had a per se conflict of interested due to being the prosecutor who first

presented the case to the grand jury. The Court takes Ewing's assertion that his trial counsel did in fact have a per se conflict of interest as true for the purposes of this Claim. However, after examining the record it is clear that Ewing's waiver of the conflict was valid. Ewing told the trial judge that he understood the nature of his attorney's work in the case and agreed to waive it. (Doc. 18-4, pp. 164-66). Additionally, none of the factors that could point to an unknowing waiver are present in this case. *See People v. Crosby*, No. 4-13-0742 (4th Dist. August 26, 2015) (listing factors such as age and criminal history as important to determining whether a waiver was knowing). The Court finds that Ewing knowingly waived the conflict of interest and cannot now challenge counsel's performance on that ground.

Claim 7 alleges a violation of Ewing's right to a speedy trial and effective assistance of counsel due to the delay between the initial filing of charges and trial after he made a speedy trial demand. This claim was dismissed by the trial court as procedurally defaulted because it was not raised on direct review. (Doc. 18-10, p. 657). The claim is therefore procedurally defaulted and cannot be reviewed on the merits in this Court. Even if this claim was not procedurally defaulted, Ewing waived any conflict of interest from trial counsel as noted above. Further, this issue is a state statutory claim not a federal constitutional claim and may not be raised in this Court. 28 U.S.C. 2254(a).

Claim 9 alleges ineffective assistance of counsel due to trial counsel telling the jury in his opening statement that Clifton Wheeler would testify to exonerate Ewing but the witness was not called nor interviewed by trial counsel. Trial counsel attempted to call Cliffton Wheeler to testify at trial, but Wheeler invoked his Fifth

Amendment right to not testify. (Doc. 18-11, pp. 446-67). Trial counsel reasonably believed that there was no Fifth Amendment claim because Wheeler had testified before the grand jury in this case, potentially waiving any ability to invoke the right at trial. (Doc. 18-7, p. 160). Wheeler's later invocation of his Fifth Amendment right was likely not foreseeable during opening statements. Therefore, trial counsel was not deficient for promising that there would be testimony from a witness he reasonably believed would be available to testify.

Claim 10 alleges that Keith Jensen, one of the prosecutors in the case, threatened Clifton Wheeler with prosecution for another murder if Wheeler testified for the defense. (Doc. 18-11, p. 440). The trial record shows that, based on the advice of his attorney, Wheeler did not testify due to a legitimate fear of prosecution for perjury and an unrelated homicide. (*Id.* at 446-47). Illinois allows a person to refuse to testify where, as is the case here, the witness has a credible fear of being charged with perjury due to inconsistent prior statements. *See People v. Young*, 231 Ill.App.3d 40, 73 (1st Dist. 1992). Further, a defendant must show that the judge or prosecutor exerted "improper influence" on the witness to prevent their testimony. *People v. Cross*, 101 Ill.App.3d 435, 437 (1st Dist. 1981).

Here, Wheeler's attorney informed the prosecutor that Wheeler would refuse to testify before Wheeler was called as a witness. (Doc. 18-11, p. 446). Jensen then stated, in response to a question from the judge, that Wheeler still had potential criminal liability in related cases. (*Id.*). Jensen merely stating that Wheeler could be charged based on his testimony was not an exertion of improper influence over Wheeler. *See Cross*, 101 Ill.App.3d at 437 (holding that prosecutor did not exert

improper influence when charging a potential witness as a co-defendant when the witness arrived in court to testify for the defense).

Claim 11 alleges that the State violated discovery rules by admitting for the first time in closing arguments that Demond Spruill was released from prison early for his cooperation. Ewing's claim mischaracterizes the record. Spruill testified that he had not negotiated with the State nor expected to receive any deals for his testimony in that case. (Doc. 18-6, p. 94). The prosecution stated in its closing argument that Spruill was released early due to his cooperation with the police regarding other crimes, not the Riddlespriger murder. (Doc. 18-7, p. 130) ("if you're involved with the investigation *of other crimes*, yeah, you do get out a little early") (emphasis added). Spruill was therefore not lying when he said that he received no deal for testifying against Ewing so there was nothing for the prosecution to correct.

Claim 12 alleges that Ewing was denied a fair trial because the prosecution argued that the State's witnesses had no motive to favor the State and vouched for its case. Ewing is correct that prosecutorial vouching is not allowed in some contexts. *See United States v. Edwards*, 581 F.3d 604, 609 (7th Cir. 2009) (stating that a prosecutor cannot express personal beliefs about the credibility of a witness or hint to outside reasons to trust witness). The statements alleged to be vouching were during closing argument when the prosecution argued that there was no evidence to support the defense's claim that witnesses lied or had any motive to lie when testifying at trial. (Doc. 18-7, pp. 123-24).

The prosecution's response to the claim made by the defense in its closing argument is not impermissible vouching. The statement was not based on the

prosecutor's opinion and merely highlighted what he believed the evidence showed. *See United States v. Morgan*, 113 F.3d 85, 89 (7th Cir. 1997) (holding that the prosecutor must inject his own opinion about the credibility of the witnesses to become impermissible vouching). These statements therefore did not deprive Ewing of his due process rights.

Claim 13 alleges that Ewing's trial and appellate counsel were ineffective for failing to raise Claims 6-12 which were apparent from the record. As discussed above, none of the claims which Ewing has alleged should have been raised have any merit to them. Trial and appellate counsel therefore were not ineffective because they did not fail to raise any meritorious claims at trial or on appeal. Further, because the claims were not meritorious there is no prejudice to Ewing for the failure to bring them.

## CONCLUSION

For the reasons set forth above, Petitioner Jeffrey Ewing's Petition for Habeas Relief Pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED** in its entirety. This action is **DISMISSED** with prejudice. All pending motions are **DENIED as MOOT.** The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close the case.

### CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

In order for a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Here, no reasonable jurist would find it debatable whether this Court's rulings were correct. Accordingly, the Court denies a certificate of appealability.

Ewing may reapply for a certificate of appealability to the United States Court of Appeals for the Seventh Circuit. *See* Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c)(1).

**IT IS SO ORDERED.**

**DATED:  March 27, 2024**

<u>**s/ *Stephen P. McGlynn***</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**